Mark ESPALIN and Irasema Espalin, Individually and as next friend of Autumn Nicole Espalin, a minor, Appellants,

v.

CHILDREN'S MEDICAL CENTER OF DALLAS and Dr. Todd Massey, Appellees.

No. 05–99–00981–CV.

Court of Appeals of Texas, Dallas.

Sept. 8, 2000.

Daniel C. Perez, Dallas, Ad Litem.

Carlos Eduardo Cardenas, Law Offices of Joseph (SIB) Abraham, Jr., El Paso, for Appellant.

Lori Dalton, Scott Patrick Stolley, Thompson & Knight, P.C., Susan Jane Travis, Charles T. Frazier, Jr., R. Michael Northrup, Phillipa M. Remington, Cowles & Thompson, P.C., Dallas, for Appellee.

Before Justices LAGARDE, WHITTINGTON, and MOSELEY.

## OPINION

Opinion By Justice WHITTINGTON.

Mark and Irasema Espalin, individually and as next friend of their minor daughter, Autumn Nicole Espalin, (collectively, the "Espalins"), appeal the trial court's summary judgment in favor of Children's Medical Center of Dallas ("Children's") and Dr. Todd Massey. In four points of error, the Espalins contend the trial judge erred in granting (i) Children's no-evidence summary judgment motion because the Espalins raised more than a scintilla of evidence on every challenged element of their claims against Children's, (ii) Children's motion for a rule 166a(c) summary judgment on the Espalins' claims for imputed negligence and imputed failure to obtain informed consent because Children's failed to establish as a matter of law that Dr. Steves Ring, Dr. Massey, and Dr. Gary Cieslak were not Children's agents or employees or, alternatively, summary judgment was improper because the Espalins' summary judgment evidence raised material fact issues regarding whether Drs. Ring, Massey, and Cieslak were Children's agents or employees, and (iii) Dr. Massey's no-evidence summary judgment motion because the Espalins raised more than a scintilla of evidence on the challenged elements of their informed consent claim. For the reasons that follow, we reverse the trial court's judgment to the extent it grants summary judgment on the Espalins' informed consent claim against Dr. Massey and remand that claim to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

Mark and Irasema are the natural parents of Autumn. Autumn was born on May 27, 1995 with major heart defects: coarctation of the aorta and a ventricular septal defect (VSD) with a large patent ductus arteriosus (PDA). She was admitted to Children's for further evaluation and management of her heart condition. At the time of her admission, Autumn was able to move all extremities of her body. On December 12, 1995, Autumn underwent surgery to repair the coarctation and PDA. Dr. Ring, a thoracic and cardiovascular surgeon, performed the surgery in which Dr. Massey assisted and Dr. Cieslak administered anesthesia. After the operation, Autumn was unable to move her lower extremities. She was later diagnosed with permanent paraplegia of her lower extremities, caused by a lack of oxygen to her spinal cord during surgery.

## PROCEDURAL BACKGROUND

The Espalins sued Children's and Drs. Ring, Massey, and Cieslak on multiple grounds of negligence, including the failure to warn and obtain informed consent with respect to paraplegia and to advise of appropriate alternative treatments. On April 7, 1999, Drs. Ring and Massey filed a joint motion for partial summary judgment on the issue of informed consent. In the motion, the doctors alleged they were entitled to summary judgment because the summary judgment evidence showed the Espalins were aware of the risk of paraplegia and, in spite of the risk, consented to the surgery.[1] The doctors relied, in part,

---

1. Specifically, the motion alleged the Espalins failed to establish a legally cognizable cause of action against the doctors because the Espalins did not establish (i) Dr. Ring and Dr. Massey failed to inform the Espalins of the risks inherent in the procedure which would influence a reasonable person's decision to consent to the treatment, (ii) a reasonable person would have refused the procedure if fully informed of the inherent risks that allegedly were not disclosed, and (iii) the alleged

on the deposition testimony of the Espalins' expert witness, Dr. Kevin Turley. Regarding the issue of informed consent, Dr. Turley testified Dr. Massey "obtained it, clearly, and ... that an informed consent, as far as paraplegia, was delivered by the previous note." That same day, Dr. Massey also filed a motion for a no-evidence summary judgment on the Espalins' other negligence and gross negligence causes of action against him. In his motion, Massey claimed there was no evidence (i) he failed to comply with the applicable standard of care, (ii) his failure to comply with the standard of care was the proximate cause of harm to the Espalins, and (iii) his acts and/or omissions constituted gross negligence or malice. In support of his motion, Dr. Massey relied on Dr. Turley's deposition testimony in which Dr. Turley stated that, after reviewing Autumn's medical records, he would not offer any opinion regarding whether Dr. Massey breached the standard of care and was withdrawing the criticisms and opinions made about Dr. Massey in a previous report. Dr. Turley further testified he did not believe Dr. Massey was responsible for any of the alleged negligent acts or omissions in this case.

On April 23, 1999, Children's filed a motion for summary judgment on all the Espalins' causes of action. In its motion, Children's alleged it was entitled to summary judgment because there was no evidence (i) Children's breached any duty owed directly to Autumn or that any employee or agent of Children's breached the standard of care applicable to Autumn, (ii) Dr. Ring, Dr. Massey, or Dr. Cieslak was Children's agent or employee, and (iii) Dr. Massey was negligent. Children's also alleged the summary judgment evidence established there were no genuine issues of material fact regarding whether Dr. Ring, Dr. Massey, or Dr. Cieslak was Children's agent or employee.

failure to obtain informed consent was the proximate cause of harm to the Espalins.

On May 11, 1999, the Espalins filed responses to the summary judgment motions and a first amended petition. In the amended petition, the Espalins added various causes of action for negligence as to each defendant. Regarding the informed consent cause of action, the Espalins alleged only that Children's and Dr. Massey failed to properly warn and obtain complete informed consent from the Espalins with respect to alternate forms of treatment and the risks associated with those alternate forms of treatment prior to the December 12, 1995 surgery. The informed consent cause of action against Dr. Ring also claimed Dr. Ring failed to properly warn and obtain complete informed consent with respect to alternate forms of treatment and the risks associated with the same and added that he failed to properly warn and obtain complete informed consent from the Espalins with respect to the risk of paraplegia. On May 17, 1999, Children's filed its reply to the Espalins' response and amended petition.

On May 18, 1999, the trial judge signed an order granting Dr. Ring and Dr. Massey's motion for partial summary judgment on informed consent.[2] That same day, the Espalins nonsuited their claims against (i) Dr. Massey for negligence and (ii) Children's directly for the failure to use ordinary care in the selection of physicians and in periodically monitoring physicians for competency and as respondeat superior for the negligence of Dr. Massey. The Espalins expressly reserved "the right to continue to prosecute their claims against Dr. Massey for failure to obtain informed consent" and "all other claims" against Children's. On May 19, 1999, the trial judge granted Children's motion for summary judgment without specifying the grounds.

On June 11, 1999, the trial judge signed the "Agreed Motion to Sever" all claims

2. The order contained the following phrase: "It is Ordered that all relief not granted herein for or against Dr. Massey to this cause is denied."

and causes of action asserted against Children's by the Espalins. The order concluded with the following: "IT IS FURTHER ORDERED that all relief not expressly granted in the hospital's summary judgment is hereby denied in the severed action." The trial court's order did not indicate that a separate cause number had been assigned to the severed claims and causes. Six days later, on June 17, 1999, the Espalins filed their notice of appeal in this cause.

On August 5, 1999, the trial judge signed an order approving an agreed motion to sever all claims by the Espalins against Dr. Massey into "a separate and severed cause of action ... Cause Number DV99–6480." The trial judge further ordered that the "interlocutory order dismissing these claims be made final." The Espalins did not file a separate notice of appeal as to Dr. Massey. Two months later, the trial judge signed an agreed order granting the Espalins' motion for nonsuit with prejudice as to Dr. Ring and Dr. Cieslak.

### JURISDICTION

■ Initially, we must determine which causes of action and parties are properly before this Court on appeal. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993); *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678 (Tex.1990). A summary judgment that does not dispose of all issues and parties is interlocutory and may not be appealed absent statutory authority permitting an interlocutory appeal. *See Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig.proceeding); *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). Alternatively, the trial judge may sign an order severing a party, cause of action, or issue, thereby rendering an otherwise interlocutory summary judgment final. *See Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex.1994) (otherwise final judgment that fails to dispose of all parties and all issues may be made final for purposes

of appeal by severing parties and issues disposed of by judgment into different cause); *Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 547 (Tex.1991) (summary judgment which does not dispose of all parties and issues in pending suit is interlocutory and not appealable unless judge orders severance); *Schlipf*, 644 S.W.2d at 454 (no appeal will lie from partial summary judgment unless judge orders severance). An order granting a severance is effective when signed, regardless of whether the district clerk creates a separate physical file with a different cause number. *McRoberts v. Ryals*, 863 S.W.2d 450, 452–53 (Tex.1993). Following such a severance, the judgment becomes final and may be appealed without a separate physical file or different number. *See Martinez*, 875 S.W.2d at 313; *McRoberts*, 863 S.W.2d at 453.

On June 3, 1999, after the trial judge granted partial summary judgment in favor of Drs. Ring and Massey on the issue of informed consent and summary judgment in favor of Children's on all causes of action and claims asserted against it by the Espalins, the Espalins and Children's filed an agreed motion to sever. The motion provides, in pertinent part:

On May 17, 1999, the Court granted [Children's] Motion for Summary Judgment and dismissed with prejudice all of [the Espalins'] claims against Children's.

Severance is appropriate because the Court's ruling disposed of all claims against Children's. Thus, in order to avoid additional expense and delay, *Children's requests that [the Espalins'] claims against it be severed and that the interlocutory order granting its Motion for Summary Judgment be made final.*

\* \* \*

■ FOR THESE REASONS, Plaintiffs [the Espalins] and Defendant [Children's] respectfully request that the Court sever those portions of the case pertaining to [the Espalins'] claims against Children's *so that the interlocu-*

*tory order dismissing those claims may be made final.*

(Emphasis added.) On June 11, 1999, the trial judge signed the order and, pursuant to rule of civil procedure 41, severed "all claims and causes of action asserted against [Children's] by [the Espalins]." On June 17, 1999, the Espalins then filed their notice of appeal listing all three doctors and Children's as defendants and indicating the cause number of the parent case (97–10460). The notice then states "[t]he judgments appealed from are a summary judgment signed on May 19, 1999, and a summary judgment signed on May 20, 1999." [3] At the time the Espalins filed their notice of appeal, Children's summary judgment had been made final by virtue of the June 11th severance even though the severance order did not indicate a new cause number for the severed cause. *See McRoberts,* 863 S.W.2d at 452–53. Thus, we conclude the June 17th notice of appeal was a bona fide attempt to appeal the summary judgment granted in favor of Children's, *see McRoberts,* 863 S.W.2d at 454–55, and we therefore have jurisdiction over this portion of the appeal.

■ In his appellate brief, Dr. Massey argues this Court does not have jurisdiction over the portion of the appeal in which the Espalins contend the trial judge erred in granting Dr. Massey summary judgment on the issue of informed consent (the Espalins' fourth point of error). Dr. Massey reasons that this Court lacks jurisdiction because Children's summary judgment was the only final judgment at the time the Espalins filed their notice of appeal. According to Dr. Massey, when all causes of action against him were subsequently severed into a separate cause number, the Espalins failed to perfect an appeal from the severed cause and, therefore, this Court lacks jurisdiction to address the Espalins' fourth point of error. In contrast, the Espalins argue that the June 17th notice of appeal was sufficient to confer jurisdiction because (i) it was a bona fide attempt to perfect an appeal as to Dr. Massey and, alternatively, (ii) although timely filed as to Children's, the notice of appeal was a premature filing with respect to Dr. Massey and once that judgment became final, the notice of appeal was deemed filed on the day of, but after, Dr. Massey's severance. *See* TEX.R.APP. P. 27. We agree with the Espalins.

Rule 27 of the rules of appellate procedure provides that "a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." TEX.R.APP. P. 27.1(a). Thus, a document filed in an attempt to appeal an interlocutory order that later becomes final serves to appeal the final judgment. *See* TEX.R.APP. P. 27.1(a); *Aguirre v. Texas Dep't of Protective & Regulatory Serv.,* 917 S.W.2d 462, 465 (Tex.App.-Austin 1996, no writ). Further, an appeal bond that bears "the original rather than the severed cause number can be amended to reflect the correct cause number." *Aguirre,* 917 S.W.2d at 465.

■ As noted previously, when the Espalins filed their notice of appeal, they listed all three doctors and Children's as defendants, indicated the cause number of the parent case (97–10460), and listed the judgments appealed from as "a summary judgment signed on May 19, 1999, and a summary judgment signed on May 20, 1999." This was a bona fide attempt to appeal the partial summary judgment in favor of Dr. Massey even though the notice of appeal was prematurely filed and bore the parent cause number. *See* TEX.R.APP. P. 27.1(a); *Aguirre,* 917 S.W.2d at 465; *McRoberts,* 863 S.W.2d at 454–55; *see also Mueller v. Saravia,* 826 S.W.2d 608, 609 (Tex.1992) (attempt to perfect appeal was "bona fide" even though motion for new trial which extended time for filing appeal was filed under parent cause number).

---

**3.** Although the dates listed in the notice of appeal are May 19, 1999 and May 20, 1999, the actual dates of the summary judgments are May 18, 1999 and May 19, 1999.

Thus, we conclude Dr. Massey's argument that we lack jurisdiction over the Espalins' fourth point of error lacks merit.[4]

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

#### Rule 166a(c)

The standards for reviewing summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.). The summary judgment motion must expressly present specific grounds for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 480 (Tex.App.-Dallas 1995, writ denied). To prevail on summary judgment, a defendant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *International Union United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.-Dallas 1991, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the defendant estab-

lishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied). Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.-Dallas 1980, no writ); *Orozco*, 975 S.W.2d at 394. If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Texas Stadium Corp. v. Savings of Am.*, 933 S.W.2d 616, 618 (Tex.App.-Dallas 1996, writ denied).

#### Rule 166a(i)

■ When a motion is presented under rule 166a(i) asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *General Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.).[5]

---

4. We find further support for our conclusion in the Texas Supreme Court's admonishments that the rules of appellate procedure should be "interpreted liberally to reach the merits whenever possible." *Aguirre*, 917 S.W.2d at 463–64 (citing *Jones v. Stayman*, 747 S.W.2d 369, 370 (Tex.1987); *Consolidated Furniture Co. v. Kelly*, 366 S.W.2d 922, 923 (Tex.1963); and *Smirl v. Globe Lab.*, 144 Tex. 41, 188 S.W.2d 676, 678 (1945)). To achieve this, the supreme court "has given appellants broad latitude to amend their perfecting instruments." *Aguirre*, 917 S.W.2d at 463–64 (citing *Maxfield v. Terry*, 888 S.W.2d 809, 810–11 (Tex.1994); *Linwood v. NCNB Tex.*, 885

S.W.2d 102, 103 (Tex.1994); *Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex.1991); and *Woods Exploration & Producing Co. v. Arkla Equip. Co.*, 528 S.W.2d 568, 570 (Tex.1975)). On May 9, 2000, during oral argument of this case, the Court granted the Espalins leave to amend their notice of appeal which they subsequently filed May 25, 2000.

5. Rule 166a(i) provides:

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one

Rather, the burden is on the nonmovant to present enough evidence to be entitled to a trial, *i.e.*, evidence that raises a genuine fact issue on the challenged elements. *See General Mills*, 12 S.W.3d at 832. If the nonmovant is unable to provide enough evidence, the trial judge must grant the motion. *See General Mills*, 12 S.W.3d at 832.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *General Mills*, 12 S.W.3d at 832–33; *see Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 195 (Tex.App.-Amarillo 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). Thus, our task as an appellate court is to determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *General Mills*, 12 S.W.3d at 833; *see Roth*, 994 S.W.2d at 195; *Jackson*, 979 S.W.2d at 70. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *General Mills*, 12 S.W.3d at 833; *see Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *General Mills*, 12 S.W.3d at 833. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow*, 953 S.W.2d at 711; *General Mills*, 12 S.W.3d at 833.

CHILDREN'S IMPUTED NEGLIGENCE

■ In their second and third points of error, the Espalins contend the trial judge erred in granting a rule 166a(c) summary judgment in favor of Children's for imputed negligence and imputed failure to obtain informed consent. Under these points, the Espalins argue Children's failed to establish as a matter of law that Drs. Ring, Massey, and Cieslak were not Children's agents or employees or, alternatively, the Espalins' summary judgment evidence raised material fact issues regarding whether Drs. Ring, Massey, and Cieslak were Children's agents or employees. We disagree.

■ Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998); *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995). The justification for imposing such liability is that the principal or employer has the right to control the means and methods of the agent or employee's work. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947; *see Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–86 (Tex.1964). In contrast, an individual or entity that hires an independent contractor is generally not vicariously liable for the tortious acts or negligence of that person because the independent contractor has sole control over the means and methods of the work to be accomplished. *See Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947; *Enserch Corp. v. Parker*, 794 S.W.2d 2, 6 (Tex.1990); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985).

or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

Tex.R. Civ. P. 166a(i).

▇▇ As a general rule, physicians are considered to be independent contractors with regard to the hospitals at which they enjoy staff privileges. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 948; *Berel v. HCA Health Servs. of Tex., Inc.*, 881 S.W.2d 21, 23 (Tex.App.-Houston [1ˢᵗ Dist.] 1994, writ denied). It follows that hospitals are not liable for the negligent acts or omissions of independent physicians. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 948; *Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 820 (Tex.App.-Amarillo 1995, writ denied); *Harris v. Galveston County*, 799 S.W.2d 766, 768 (Tex.App.-Houston [14ᵗʰ Dist.] 1990, writ denied). Nevertheless, a hospital may be vicariously liable for the medical malpractice of independent contractor physicians if a plaintiff can establish the elements of ostensible agency. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 948. To establish a hospital's liability for an independent contractor's medical malpractice based on ostensible agency, a plaintiff must show (i) he or she had a reasonable belief the physician was the agent or employee of the hospital, (ii) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold herself out as the hospital's agent or employee, and (iii) he or she justifiably relied on the representation of authority. *Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 949; *Valdez v. Pasadena Healthcare Management, Inc.*, 975 S.W.2d 43, 46 (Tex.App.-Houston [14ᵗʰ Dist.] 1998, pet. denied).

Although the Espalins argue Children's summary judgment evidence fails to establish that Drs. Ring, Massey, and Cieslak were not agents or employees of Children's, we disagree. Children's submitted as summary judgment evidence the affidavit of George Farr, president and chief executive officer (CEO) of Children's. Farr testified that as president and CEO,

he was familiar with the staffing arrangements between Children's and the physicians with privileges to practice at Children's. According to Farr, the attending physicians who provide services to patients at Children's are not agents or employees of Children's. Rather, they hold medical staff privileges to treat patients at Children's. Farr testified that at the time of Autumn's surgery in December 1995, Drs. Ring, Massey, and Cieslak held medical staff privileges at Children's but were not employees or agents of Children's. Farr further testified that Children's did not have the right to assign work or direct, supervise, manage, or control the manner and details of the doctors' work.[6]

Children's also submitted the agreement for Autumn's admission into Children's and portions of Mark's and Irasema's deposition testimony. On the second page of the admission form is the following notice:

### NOTICE TO ALL PATIENTS

**Physicians who treat patients in this facility are not employees of Children's Medical Center of Dallas but are independent contractors or employees of other institutions.**

In her deposition, Irasema acknowledged reading, initialing, and signing the admission form, including the above statement. When asked whether anyone at Children's told her "anything different than what is reflected" in that statement, Irasema replied, "Not that I can recall." When asked whether anyone at Children's did anything to make her think that statement was incorrect, she again replied, "Not that I can recall." Mark similarly testified he read, initialed, and signed the admission form. When asked whether anyone at Children's told him anything different, he answered, "No." When Mark was then asked whether anyone at Children's did anything to make him think that statement was incorrect, he stated that a Dr. Mahoney took them on a

---

6. Although the Espalins contend Farr's affidavit contains a number of unsubstantiated factual and legal conclusions, we have reviewed the affidavit and disagree.

tour of the facilities and that she "made it seem like it was all ... one big happy family.... Nobody told us they were—you know, he's from somebody else or he's from somewhere else." Mark later agreed Dr. Mahoney did not say anything different from the admission form statement and did not "discuss the employment status of the physicians at all when she was giving [the Espalins] the tour."

■ This summary judgment evidence is sufficient to establish as a matter of law that Drs. Ring, Massey, and Cieslak were not Children's agents or employees. *See Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947. Thus, the Espalins had the burden to present summary judgment proof raising a fact issue as to each element of ostensible agency. *See Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 947, 949 (when defendant hospital moves for summary judgment and establishes physicians' independent contractor status, nonmovant must then submit summary judgment proof which raises fact issue as to each element of ostensible agency; in this sense, ostensible agency is "in the nature of an affirmative defense."); *Drennan*, 905 S.W.2d at 820 (when defendant hospital moves for summary judgment and establishes physicians' independent contractor status, nonmovant must then submit summary judgment proof which raises fact issue as to each element of ostensible agency).

In response, the Espalins submitted Mark's affidavit testimony in which he states he did not read, initial, or sign the second page of the admission form and that he was under the impression that the doctors who performed Autumn's surgery were employed by or representatives of Children's. He further testified Dr. Mahoney did not tell him that Dr. Ring was not Children's employee or representative. According to Mark, he believed Dr. Ring was employed by or represented Children's, in part, because the letter Dr. Mahoney sent the Espalins regarding Autumn's surgery (i) referred to "our social workers," (ii) stated that Dr. Ring will

perform the surgery, and (iii) had Children's address and telephone numbers at the bottom of the letter. The Espalins also submitted the deposition testimony of Drs. Mahoney, Ring, and Cieslak and a copy of a Children's brochure. The Espalins argue they relied on statements made by the doctors and Children's using the phrases "our staff," "our social workers," and "our institution" and the collective pronouns "we" and "us." Assuming without deciding that such evidence raises fact issues regarding whether the Espalins had a reasonable belief the physicians were the agents or employees . of the hospital, this evidence fails to establish that (i) such a belief was generated by the hospital affirmatively holding out the physicians as its agents or employees or knowingly permitting the physicians to hold themselves out as the hospital's agents or employees, or (ii) they justifiably relied on the representation of authority. There is no evidence in the record that Children's took any affirmative action to make the Espalins believe Drs. Ring, Massey, or Cieslak were employees or agents or permitted the doctors to hold themselves out as agents or employees. *See Baptist Mem'l Hosp. Sys.*, 969 S.W.2d at 949 (belief must be based on or generated by some conduct on part of hospital). Because the Espalins failed to raise material fact issues on two of the three elements of ostensible agency, we conclude the trial judge did not err in granting Children's summary judgment on the issues of imputed negligence and imputed failure to obtain informed consent. We overrule points of error two and three.

### CHILDREN'S DIRECT NEGLIGENCE

In their first point of error, the Espalins contend the trial judge erred in granting a no-evidence summary judgment in favor of Children's on the Espalins' negligence claims. Specifically, the Espalins argue they raised more than a scintilla of evidence that Children's breached a duty owed directly to Autumn by failing to (i) use ordinary care in enforcing its policies

and procedures governing how physicians obtain informed consent and (ii) provide Autumn with an appropriate and useable cooling blanket during surgery.[7]

### Informed Consent

■ The Espalins first argue the trial judge erred in granting a no-evidence summary judgment because they raised more than a scintilla of evidence indicating that Children's failed to use ordinary care in enforcing its policies and procedures governing how physicians obtain informed consent. Specifically, the Espalins claim Children's breached its duty by failing to "implement its informed consent policy in Autumn's case." We disagree.

■ In Texas, the duty to obtain informed consent is a nondelegable duty imposed solely upon the treating doctor. *Boney v. Mother Frances Hosp.*, 880 S.W.2d 140, 143 (Tex.App–Tyler 1994, writ denied); *Ritter v. Delaney*, 790 S.W.2d 29, 31 (Tex.App.-San Antonio 1990, writ denied); *Nevauex v. Park Place Hosp., Inc.*, 656 S.W.2d 923, 925 (Tex.App.-Beaumont 1983, writ ref'd n.r.e.). Hospitals have no such duty of disclosure of medical or surgical risks, nor are they required to secure a patient's informed consent prior to surgery. *Boney*, 880 S.W.2d at 143; *Gibson v. Methodist Hosp.*, 822 S.W.2d 95, 101 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *Ritter*, 790 S.W.2d at 31; *Nevauex*, 656 S.W.2d at 925.

■ When, as in this case, the trial court is barred by rules of law from giving weight to the only evidence offered to prove an essential element, the trial judge should grant a no-evidence summary judgment. *See Merrell Dow*, 953 S.W.2d at 711. Although the Espalins submitted

summary judgment evidence regarding Children's administrative policies and procedures, Children's did not have, as a matter of law, a duty to obtain informed consent or to otherwise disclose the medical or surgical risks facing Autumn. We therefore conclude the trial judge did not err in granting summary judgment in favor of Children's on the issue of informed consent.

### Equipment

■ Under this point, the Espalins also argue the trial judge erred in granting summary judgment on the issue of whether Children's provided Autumn with an appropriate and useable cooling blanket during surgery. Under this argument, the Espalins claim that based on their summary judgment evidence, a reasonable person could infer the blanket did not work during surgery and this evidence is sufficient to survive summary judgment. In response, Children's argues that whether the surgical cooling blanket malfunctioned is not a matter within the common knowledge of a lay juror and, therefore, the Espalins were required to present expert testimony to support their claim. Children's concludes that because the Espalins did not offer any such testimony, summary judgment on this issue was proper.

■ A hospital has a duty to provide its patients with appropriate and useable medical equipment. *See Tenet Health Ltd. v. Zamora*, 13 S.W.3d 464, 471 (Tex. App.-Corpus Christi 2000, pet. dism'd w.o.j.); *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex.App.-Texarkana 1999, no pet.); *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex.App.-Fort Worth 1997, pet.

---

7. In their response to Children's motion for summary judgment, the Espalins argued three additional issues: Children's was not entitled to a no-evidence summary judgment because the Espalins raised more than a scintilla of evidence that (i) an agent or employee of Children's breached a duty owed to the Espalins, (ii) Drs. Massey, Ring, or Cieslak were Children's agents or employees, and (iii) Dr.

Massey was negligent. In their brief, the Espalins concede the last issue is moot because they nonsuited Dr. Massey and Children's on the issue of Dr. Massey's alleged negligence and/or incompetence. Because we have already addressed the first two issues in the context of a rule 166a(c) summary judgment, we do not address them here.

denied, dism'd by agr.). Expert testimony is generally required to determine whether a hospital has breached a duty, unless the subject matter is common knowledge or falls within the experience of the layperson. *See Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977) (unless mode or form of treatment is matter of common knowledge or within experience of layman, expert testimony will be required to meet burden of proof); *Mills*, 995 S.W.2d at 268 (expert testimony required when issue involves performance of medical procedures because nature of alleged negligence is not within common knowledge of laymen); *Arguello v. Gutzman*, 838 S.W.2d 583, 588 (Tex.App.-San Antonio 1992, no writ) (expert medical testimony required to establish breach of duty because question of proper use of medical device not matter plainly within common knowledge of laymen).

Although the Espalins contend the judge erred in granting summary judgment because they presented evidence indicating the cooling blanket supplied by Children's did not work, we disagree. In support of their argument, the Espalins submitted the deposition testimony of Mary Reece, the nurse who assisted during Autumn's surgery. Reece testified the cooling blanket was set at 33° and remained on that temperature according to the doctors' orders from 8:45 a.m. until 10:35 a.m. In addition, the Espalins offered Dr. Cieslak's deposition testimony in which he testified that Autumn's temperature was 36.8° at 7:30 on the morning of the surgery. At 9:00 a.m., her temperature was 37.5°. According to Dr. Cieslak, while the clamps were on, the lowest Autumn's temperature reached was 36.7°, and when it rose above 37°, he applied ice packs to Autumn's head. In addition, Dr. Cieslak testified that although the optimal temperature is between 35° and 36°, whether that range can be achieved is based on how the patient's body reacts to undergoing the procedure.

In contrast, Children's submitted the deposition testimony of Drs. Ring and Cieslak. Dr. Ring testified that there were no medical devices used during Autumn's surgery which were not functioning or were improperly functioning. Dr. Cieslak similarly testified that, in his opinion, the surgery team had all the equipment and facilities necessary to safely perform the procedure and there were no medical devices or instruments which were not working properly at the time. In addition, the Espalins' expert, Dr. Turley, testified he would not offer any opinions at the time of trial that (i) any independent act by Children's or any of its employees caused or contributed to Autumn's damages and (ii) anything Children's did was negligent.

This evidence indicates that although Autumn's temperature did not drop below 36.7°, (i) the attending nurse set the blanket to the correct temperature, (ii) whether an optimal temperature range can be achieved is based on how the patient's body reacts to undergoing the procedure, (iii) according to the attending doctors, there were no malfunctioning devices, instruments, or equipment during Autumn's surgery, and (iv) the Espalins' expert would not issue an opinion that Children's was negligent. Because there is no summary judgment evidence in the record of Children's negligence with respect to the cooling blanket, we conclude the trial judge did not err in granting Children's summary judgment on this issue. We overrule the Espalins' first point of error.

### DR. MASSEY'S NO-EVIDENCE SUMMARY JUDGMENT

In their fourth point of error, the Espalins contend the trial judge erred in granting Dr. Massey's· no-evidence summary judgment motion because the Espalins raised more than a scintilla of evidence on the challenged elements of their informed consent claim. Specifically, the Espalins claim they raised more than a scintilla of evidence that Dr. Massey failed to disclose that the sub-clavian flap proce-

dure was an effective, alternative coarctation repair procedure.

In their original petition dated November 21, 1997, the Espalins alleged Dr. Massey breached his duty by "[f]ailing to warn and obtain informed consents from [the Espalins] with respect to the risks of paraplegia associated with the December 12, 1995 surgery and to advise of appropriate alternative treatments." In his April 7, 1999 motion for partial summary judgment, Dr. Massey alleged he was entitled to summary judgment because the evidence showed the Espalins were aware of the risk of paraplegia and, in spite of the risk, consented to the surgery. Dr. Massey did not move for summary judgment on the grounds that there was no evidence he did not inform the Espalins about appropriate alternative treatments. On May 11, 1999, the Espalins filed their first amended petition in which they amended their informed consent claim against Dr. Massey, alleging he breached his duty by "[f]ailing to properly warn and obtain complete informed consents from [the Espalins] with respect to alternate forms of treatment and the risks associated with those alternate forms of treatment; [sic] prior to the December 12, 1995 surgery." On May 18, 1999, the trial judge granted Dr. Massey partial summary judgment on the issue of informed consent.

A motion for summary judgment must itself expressly present the grounds upon which it is made and must stand or fall on these grounds alone. *McConnell,* 858 S.W.2d at 341; *see* TEX.R. CIV. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). In other words, in determining whether grounds are expressly presented, we may not rely on briefs or summary judgment evidence. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997). A summary judgment that purports to dispose of causes of action not addressed in the summary judgment motion is erroneous. *See General Mills,* 12 S.W.3d at 836; *Mary Kay Cosmetics, Inc. v. North River*

*Ins. Co.,* 739 S.W.2d 608, 611 (Tex.App.-Dallas 1987, no writ) (citing *Young v. Hodde,* 682 S.W.2d 236, 237 (Tex.1984)).

At the time the trial judge ruled on Dr. Massey's motion, the Espalins had dropped their negligence cause of action based on Dr. Massey's failure to warn and obtain informed consent with respect to the risks of paraplegia and alleged only that he breached his duty by "[f]ailing to properly warn and obtain complete informed consents from [the Espalins] with respect to alternate forms of treatment and the risks associated with those alternate forms of treatment." Because Dr. Massey did not move for summary judgment on the ground that there was no evidence he did not inform the Espalins about appropriate alternative treatments, we conclude the trial judge erred in disposing of this issue. *See Bandera Elec. Coop. v. Gilchrist,* 946 S.W.2d 336, 337 (Tex.1997); *General Mills,* 12 S.W.3d at 836. We sustain the Espalins' fourth point of error.

We reverse the trial court's judgment to the extent it grants summary judgment on the Espalins' informed consent claim against Dr. Massey. We remand that claim to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.