NUMBER 13-03-082-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

YOLANDA M. GOMEZ AND 
JOSE LUIS ROSALES,                                                      Appellants,

v.

VALLEY BAPTIST MEDICAL CENTER, 
CHRISTOPHER HANSEN, M.D., AND
DONALD VARGAS, M.D.,                                                  Appellees.
___________________________________________________________________

On appeal from the 197th District Court
of Cameron County, Texas.
__________________________________________________________________ 

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez
         This is an appeal from a medical malpractice suit brought by appellants, Yolanda
Gomez and Jose Luis Rosales, against appellees, Valley Baptist Medical Center,
Christopher Hansen, M.D., and Donald Vargas, M.D. We affirm.
Background
         Appellants’ daughter, Erica Rosales Romero, was seriously injured in an
automobile accident and was admitted to Valley Baptist Medical Center on July 5,
1998. Erica required major orthopedic surgery for her injuries. Dr. Hansen was the
chief surgeon in the hospital at the time, and Dr. Vargas was the orthopedic surgeon
on site. After initial consultation and tests, Erica’s husband, Richard Romero, informed
the staff that he did not wish Dr. Vargas to be his wife’s surgeon.  
         During Erica’s hospital stay, her neurological condition rapidly deteriorated. Dr.
Briones, Valley Baptist’s vice president of guest relations, informed Richard that no
qualified surgeons other than Dr. Vargas were available at Valley Baptist and that
surgery was necessary as soon as possible. Richard changed his mind, and Dr. Vargas
was asked to return to the case and prepare Erica for surgery as soon as her condition
had adequately stabilized. Meanwhile, a cardiologist requested a transesophogeal
exam (TEE) to determine if Erica had an atrial septal defect. The first attempt to
perform the TEE failed, and the doctors decided the TEE could be done during the
surgery. Dr. Briones scheduled a meeting with Richard in order to obtain his consent
to perform the TEE. Richard did not appear for the meeting but ultimately gave his
consent when he was reached later. 
         The day of Richard’s scheduled meeting with Dr. Briones, Erica had to be placed
on a respirator. The next day she was found to be suffering from fatty embolism
syndrome (FES), a condition where bits of fat discharged from fractured bones travel
to the lungs and interfere with breathing. Surgery was never performed as Erica’s
condition continued to deteriorate, and she died a week later of pulmonary failure. 
         Appellants, Erica’s parents, then sued Richard and appellees for negligence and
medical malpractice. Before jury impaneling, all claims by and against Richard were
non-suited. At the close of plaintiffs’ evidence, the trial judge granted directed
verdicts in favor of Valley Baptist and Dr. Hansen. The case continued against Dr.
Vargas, whom the jury ultimately found not liable. 
         Appellants raise three issues on appeal: (1) the trial court erroneously excluded
evidence regarding Dr. Hansen’s breach of the standard of care and therefore
erroneously directed a verdict in his favor, (2) the trial court erroneously granted a
directed verdict in favor of Valley Baptist as there was evidence of unavailable surgical
hardware and a failure to obtain consent, and (3) the trial court erroneously excluded
evidence regarding Dr. Vargas’s breach of the standard of care and therefore the jury
erroneously failed to find liability. 
Dr. Hansen
         By their first issue, appellants allege that the trial court erroneously excluded
expert testimony which would have established that Dr. Hansen breached the medical
standard of care. 
         The trial court granted a motion for a directed verdict in favor of Dr. Hansen. 
A directed verdict is proper when (1) a defect in the opponent’s pleading makes the
pleading insufficient to support a judgment, (2) the evidence conclusively proves a fact
that establishes a party’s right to judgment as a matter of law, or (3) the evidence
offered on a cause of action is insufficient to raise an issue of fact. Encina Partnership
v. Corenergy, L.L.C., 50 S.W.3d 66, 68 (Tex. App.–Corpus Christi 2001, pet. denied). 
The appellate court reviews a directed verdict in the light most favorable to the party
against whom the verdict was rendered, disregarding all contrary evidence and
inferences. Id. at 68; see Szczepanik v. First S. Trust Co, 883 S.W.2d 648, 649 (Tex.
1994) (per curiam).
         Appellants assert that the directed verdict would not have been rendered but for
the exclusion of the testimony of Joseph Padula, M.D., one of appellants’ expert
witnesses. Dr. Padula is a pulmonary specialist who was brought into the case by
appellants in order to provide expert testimony as to the standard of care and breaches
of that standard by Dr. Hansen and Dr. Vargas.
         A trial court determines whether to admit expert testimony in medical
malpractice cases by referring to statutory standards. According to the relevant
statute at the time of the case, the court must determine whether a proposed witness
is qualified to provide expert testimony by determining whether the witness (1) is
board certified or has other substantial training or experience in an area of medical
practice relevant to the claim, or (2) is actively practicing medicine in rendering medical
care services relevant to the claim. See Act of May 5, 1995, 74th Leg., R.S., ch.
140, § 1, sec. 14.01(c), 1995 Tex. Gen. Laws 985 (repealed 2003) (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.401(c) (Vernon Supp. 2004-05)). When the
issues raised involve questions of special medical expertise, the party offering expert
medical testimony must establish that the expert has “knowledge, skill, experience,
training, or education” regarding the specific issue before the court which would
qualify the expert to give an opinion on that particular subject. See Broaders v. Heise,
924 S.W.2d 148, 153 (Tex. 1996); see also Tex. R. Evid. 702. An appellate court
reviews a trial court’s decision to strike an expert’s testimony for an abuse of
discretion. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex.
1998). 
         Dr. Padula specializes in internal medicine and pulmonary diseases. He practices
medicine at a weaning facility where patients who have been on ventilators are
weaned off them. Dr. Padula testified that a TEE would have been unnecessary in a
patient with Erica’s injuries, and that delaying surgery in order to obtain consent to
perform the TEE was a breach of the medical standard of care. Dr. Padula, however,
also testified that he had not practiced orthopedics, had no training in orthopedic
surgery, had no practice as a general surgeon, and had never been in a position which
required him to make decisions determining whether or not an orthopedic procedure
was appropriate. He did demonstrate his expertise in the area of pulmonary diseases
and was accordingly permitted to testify regarding Erica’s pulmonary condition and
state that from a pulmonary standpoint, there was no reason that Erica could not have
undergone surgery. Other than referring to three articles on the topic he had read
when reviewing Erica’s medical records, however, Dr. Padula did not demonstrate that
he had “knowledge, skill, experience, training, or education” in the fields of general
surgery, orthopedic surgery and neurology. 
         Appellants rely on the Texas Supreme Court’s holding in Roberts v. Williamson,
111 S.W.3d 113, 122-23 (Tex. 2003), to demonstrate that expert testimony does not
necessarily need to come from specialists involved in the same field as the defendant
doctors. In the Roberts case, a pediatrician was allowed to testify regarding the
causation of neurological injuries in a child. Id. at 122. That pediatrician, however,
had several relevant certifications related to neurology, had studied the effects of
pediatric neurological injuries, and had extensive experience advising parents about the
effects of those injuries. Id. The pediatrician made his evaluation of the patient’s
injuries based on his own experience, training and education, as well as the patient’s
medical records, advice from another pediatric neurologist, and several peer-reviewed
medical-journal articles and textbooks on pediatric neurology. Id. In this case, Dr.
Padula did not testify as to any personal experience with or substantive study of
neurological or orthopedic injuries, and he did not have any current relevant
certifications. Given the trial court’s broad discretion in determining whether expert
testimony should be allowed, we conclude that, even in light of the Roberts holding,
the trial court did not erroneously exclude Dr. Padula’s testimony regarding Dr.
Hansen’s duties to Erica. See Broaders, 924 S.W.2d at 153. As there was no other
issue of material fact raised by appellants, we accordingly conclude that there was no
error in the directed verdict in favor of Dr. Hansen. See Encina Partnership, 50 S.W.3d
at 68. We overrule appellants’ first issue on appeal.
 
 
Valley Baptist Medical Center
         By their second issue, appellants allege that the trial court erred in granting a
directed verdict in favor of Valley Baptist. They assert that Valley Baptist was
negligent in not having available the surgical equipment necessary to perform surgery
immediately upon Erica’s arrival at the hospital and that Valley Baptist failed to follow
proper procedures in obtaining consent for Erica’s medical procedures. As described
above, the same standards for review of a directed verdict apply. See id.
         We first address the availability of the surgical hardware required for Erica’s
surgery. In a medical malpractice case, plaintiffs are required to show evidence of a
reasonable medical probability that their injuries were proximately caused by the
negligence of the defendants. Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508,
511 (Tex. 1995). Texas courts have interpreted this requirement to mean that the
ultimate standard of proof on the causation issue is whether, by a preponderance of
the evidence, plaintiffs have shown that the negligent act or omission was a
substantial factor in bringing about the harm and without which the harm would not
have occurred. Id.; Kramer v. Lewisville Mem. Hosp., 858 S.W.2d 397, 400 (Tex.
1993). 
         The record establishes a cadaver bone for a bone graft and various retrograde
nails were required for Erica’s surgery. The record is more ambiguous with regard to
whether these implements were available on July 5, the first day of Erica’s
hospitalization. A doctor at Valley Baptist testified that it would have been physically
possible to perform surgery on July 5, but he failed to specify whether the correct
hardware was available. This doctor was not specifically questioned as to whether the
hardware was available. Dr. Vargas, Erica’s orthopedic surgeon, testified that he did
not know whether the hospital had the proper equipment in stock but that he had not
been informed by hospital staff as to any difficulties in obtaining the necessary
equipment. He testified that the hospital’s usual practice was to call and inform him
if there was any unavailable equipment, and in this case, he did not receive any such
call. Thus, appellants did not provide conclusive evidence that any of the necessary
hardware was not available on July 5. 
         Furthermore, even if the hardware had been initially unavailable, there was no
evidence to indicate that it was also unavailable on July 6, the second day of Erica’s
hospitalization. Appellants’ own expert testified that the standard of care required
surgery no later than July 7. Appellants have failed to establish that any alleged
problems in obtaining the necessary hardware on July 5 would have proximately
caused Erica’s death, given that surgery could have taken place up to two days later. 
See Park Place Hosp., 909 S.W.2d at 511. 
         Appellants also argue that Valley Baptist failed to follow the proper procedure
in obtaining consent for surgical procedures. In Texas, informed consent causes of
action against health care providers are governed by statute. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.104 (Vernon Supp. 2004-05). These are considered negligence
actions. McKinley v. Stripling, 763 S.W.2d 407, 409 (Tex. 1989). A hospital may
be liable for injuries arising from the negligent performance of a duty that the hospital
owes directly to the patient. See Reed v. Granbury Hosp. Corp., 117 S.W.3d 404,
409 (Tex. App.–Fort Worth 2003 no pet.). Thus, in order for appellants to prevail,
they must demonstrate that Valley Baptist owed a duty directly to the patient to
disclose medical risks and possible complications that could arise from the surgery as
well as to secure written informed consent to the surgical procedure from the patient. 
See Reed, 117 S.W.3d at 409; Boney v. Mother Frances Hosp., 880 S.W.2d 140,
142-43 (Tex. App.–Tyler 1994, writ denied). In Texas, however, this duty is imposed
solely upon the treating doctor and is a non-delegable duty. Boney, 880 S.W.2d at
143. The hospital has no such duty of disclosure, and it is not required to secure a
patient’s informed consent prior to surgery. See id.; see also Reed, 117 S.W.3d at
415 (“In Texas, medical decisions are to be made by attending physicians. . . . A
hospital cannot practice medicine and therefore cannot be held directly liable for any
acts or omissions that constitute medical functions.”). 
         In some situations, however, a hospital may be vicariously liable for the medical
malpractice of independent physicians if a plaintiff can establish the elements of
ostensible agency. See Espalin v. Children’s Med. Ctr. of Dallas, 27 S.W.3d 675, 684
(Tex. App.–Dallas 2000, no pet.) To establish a hospital’s liability for a physician’s
medical malpractice based on agency, a plaintiff must show (1) he had a reasonable
belief the physician was the agent or employee of the hospital, (2) such belief was
generated by the hospital affirmatively holding out the physician as its agent or
employee or knowingly permitting the physician to hold herself out as the hospital’s
agent or employee, and (3) he justifiably relied on the representation of authority. Id. 

         Appellants concede that there is a general principle of law that doctors, not
hospitals, are responsible for obtaining consent and that this duty is non-delegable. 
They argue, however, that Valley Baptist also had a duty to properly obtain consent,
asserting that (1) Valley Baptist has consent policies requiring physicians to abide by
certain procedures in obtaining consent and that (2) Valley Baptist’s staff is at least
clerically involved in obtaining consent and may elaborate on medical information
provided by the physicians. They base this assertion on Valley Baptist’s internal
“Authority to Consent” policy. 
         The only way in which liability would attach to Valley Baptist regarding the
obtaining of consent is if an agency relationship between the hospital and the
physicians is established. See id. We have reviewed the consent procedures and the
record showing how consent was obtained in this case, and we do not find that any
of the elements of agency have been met. The purpose of Valley Baptist’s consent
policy is to ascertain which parties have authority to consent to surgical procedures
for a patient. There is no indication in the policy that Valley Baptist itself is assuming
authority over the consent process or that physicians obtaining consent from patients
are permitted to hold themselves out as agents or employees of Valley Baptist. There
is also no direction regarding how consent is to be obtained; the policy only identifies
from who, not when or how, the consent must be obtained. 
         The consent eventually obtained from Richard also contains no indication that
there was any representation of an agency relationship between the hospital and the
attending physicians.


 Therefore, we conclude that no agency relationship was
established, and Valley Baptist did not control or endorse the consent obtained. 
Consequently, Valley Baptist was not responsible for obtaining consent to perform
Erica’s surgery. 
         As appellants have failed to raise an issue of fact on both grounds of liability
asserted, we conclude that the trial court did not err in granting Valley Baptist’s motion
for a directed verdict. See Encina Partnership, 50 S.W.3d at 68. We overrule
appellants’ second issue. 
Dr. Vargas
         By their third issue, appellants argue that the trial court’s evidentiary errors
caused the rendition of an improper judgment in favor of Dr. Vargas. Appellants object
to the exclusion of Dr. Padula’s testimony as well as the directed verdict granted in
favor of Dr. Hansen. Appellants assert that because Dr. Hansen was no longer a
defendant in the trial before the jury, Dr. Vargas was able to imply at trial that Dr.
Hansen was actually responsible for the decisions leading to Erica’s death. 
         We have previously concluded that the trial court did not err in excluding Dr.
Padula’s testimony. Thus, if the exclusion of Dr. Padula’s testimony led to the jury
verdict in favor of Dr. Vargas, we find no error in the verdict. We also note that
another expert witness for appellants, Ian Fries, M.D., was allowed to testify before
the jury regarding the standard of care and Erica’s injuries. Furthermore, we have 
found no error in the trial court’s decision to grant a directed verdict in favor of Dr.
Hansen, leading us to conclude that his absence as a defendant before the jury should
not have led to an erroneous verdict with regard to Dr. Vargas. Finally, we note that
counsel for Dr. Vargas did mention Dr. Hansen twice during closing arguments;
however, counsel emphasized much more strongly the absence of doctors other than
Dr. Hansen from the suit: “[A]sk yourselves this: Why didn’t they sue Dr. Fennegan? 
Why didn’t they sue the cardiologist, Dr. Blake? . . . [A] suit was filed against Mr.
Romero, the hospital, Dr. Hansen and Dr. Vargas. They didn’t even sue the important
decision makers, Dr. Fennegan or Dr. Blake.” It is extremely unlikely that these brief
mentions of Dr. Hansen’s role, even if erroneous, could have influenced the jury to
reach an improper verdict. See Birchfield v. Texarkana Mem. Hosp., 747 S.W.2d 361,
365 (Tex. 1987). 
         We conclude that evidentiary errors did not lead to an improper jury verdict, and
we overrule appellants’ third issue on appeal. 
Conclusion
We affirm the judgment of the trial court. 
                                                                                                
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Memorandum Opinion delivered and 
filed this 26th day of May, 2005.