**Affirm in part; Reverse and Render in part; Opinion Filed January 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01581-CV

**ARMSTRONG DLO PROPERTIES, LLC, Appellant**
**V.**
**TODD A. FURNISS AND HEATHER E. FURNISS, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-11883-E**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill[1]
Opinion by Justice Lang

Appellant Armstrong DLO Properties, LLC ("ADLO") appeals the trial court's order granting summary judgment that ADLO take nothing in favor of appellees Todd A. Furniss and Heather E. Furniss ("the Furnisses"). The order also awarded the Furnisses $40,670 in attorney's fees against ADLO. The controversy brought before us is respecting title to a portion of a continuous strip of real property situated between two homes located on Armstrong Parkway in the Town of Highland Park, Dallas County, Texas.

In five issues on appeal, ADLO contends the trial court reversibly erred by (1) granting the Furnisses' "no-evidence and traditional motion" for summary judgment, (2) acting "sua

---

[1] The Honorable Kerry P. FitzGerald, Retired Justice, was a member of the panel at the time this case was submitted, but due to his retirement from this Court on December 31, 2014, he did not participate in deciding this case. He was replaced on the panel by Justice Bill Whitehill in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 41.1.

sponte" in "consider[ing] evidence and grounds not presented to the [trial court]" and "making conclusions as to the veracity and credibility" of ADLO's summary judgment evidence, and (3) "granting [the Furnisses] attorney's fees contrary to Texas jurisprudence."

We decide against ADLO on its first through fourth issues. ADLO's fifth issue is decided in its favor. We reverse the portion of the trial court's order awarding the Furnisses attorney's fees against ADLO and render judgment denying the Furnisses' request for attorney's fees. In all other respects, the trial court's order is affirmed. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a) 47.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The real property in question is described by the parties as a portion of a continuous strip of real property situated between the home located at 4236 Armstrong Parkway, which home is owned by the Furnisses, and the home located at 4242 Armstrong Parkway. The continuous strip in its entirety is approximately sixteen feet wide and two-hundred feet in length. The back portion of the strip, running from the rear of the properties to a patio in the approximate center of the strip, is referred to by the parties as the "dogleg." The front portion of the strip, from the patio forward to Armstrong Parkway, constitutes the real property in question and is referred to as the "front strip."[2]

ADLO filed this lawsuit in October 2012, asserting causes of action against the Furnisses for "Trespass to Try Title/Suit to Quiet Title" and "Declaratory Judgment Relief." Specifically, ADLO stated in its petition (1) the front strip[3] was conveyed to ADLO in 2012 by David Lee Obenchain ("Obenchain"), the sole owner of ADLO and a former owner of the home located at 4242 Armstrong; (2) ADLO is the owner of the front strip; and (3) "[d]espite the foregoing, [the

---

[2] Because the parties' arguments range broadly, we recount the procedural and evidentiary histories in great detail.

[3] Additionally, ADLO's petition included claims asserting ownership of the dogleg. However, the record shows ADLO non-suited all requests for relief pertaining to the dogleg on August 14, 2013, prior to the trial court's order complained of.

–2–

Furnisses] have recently made verbal claims to the [front strip]." ADLO requested the trial court to declare ADLO the owner of the front strip, "order [the Furnisses] to cease to assert any claims" to that property, and award ADLO attorney's fees pursuant to the Texas Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.011 (West 2008). Additionally, ADLO's petition contended in part (1) Obenchain and his predecessors in title "have paid the ad valorem taxes assessed against the [front strip] for years and years"; (2) the Furnisses and their predecessors in title to 4236 Armstrong "have never paid the ad valorem taxes assessed against the [front strip]"; (3) the front strip "has been under the open, undisputed, and unchallenged possession and control" of ADLO's predecessors in title "since at least 1949"; (4) the Furnisses' claims of ownership to the front strip are "apparently" based on a certain warranty deed purportedly executed in 1949 that was filed in 1971 (the "1949 warranty deed"); and (5) the 1949 warranty deed "was not filed of record until over twenty-two (22) years after it was purportedly executed," "was not properly executed in accordance with the laws of the State of Texas" because it "was not executed in front of a notary public," "should not have been recorded in the deed records because of the improper acknowledgment," "was never acknowledged by [the Dallas Central Appraisal District]," and "was not known to have been filed until the recently completed sale of 4242 [Armstrong]."

The Furnisses filed a general denial answer and asserted affirmative defenses and counterclaims. The Furnisses' affirmative defenses included, in part, (1) ADLO's claims are barred by the statute of limitations, (2) "[ADLO's] claim for declaratory relief is barred as the purported dispute is the determination of title to well-defined parcels of land for which a trespass to try title suit is the mandated cause of action," and (3) "[the Furnisses] hold full title to the subject property through adverse possession and by limitations." In their counterclaims, the Furnisses' sought (1) a declaratory judgment "validating" the 1949 warranty deed and declaring

–3–

that the Furnisses hold fee simple title to the front strip pursuant to that warranty deed and subsequent conveyance instruments and (2) fee simple title to the front strip pursuant to certain sections of the Texas Civil Practice and Remedies Code pertaining to adverse possession. *See id.* §§ 16.024–.029. Further, the Furnisses requested attorney's fees pursuant to the declaratory judgments act. *See id.* §§ 37.001–37.011.

On June 13, 2013, the Furnisses filed a "first amended no-evidence and traditional motion for partial summary judgment" (the "amended summary judgment motion").[4] In that amended motion, the Furnisses stated in part (1) they are the owners of "the single family residential tract commonly known as 4236 Armstrong Parkway . . . . (the "Property")"; (2) "[t]he width of the lot is 121.1 feet by deed description"; and (3) "[t]he disputed area at issue," i.e. the front strip, is a portion of the Property and has been "an integral part of the Property without exception from 1949 to the present day." Specifically, according to the Furnisses, (1) in 1929, Rosa L. Goodwin, a widow, became the owner of a 115-foot wide residential lot (the "Original Tract") on which the Furnisses' homestead is now located; (2) in 1945, Thomas H. Obenchain, Sr. and Scotta Goodwin Obenchain, individually and as independent executors and trustees under the will of Rosa L. Goodwin, conveyed the 115-foot wide Original Tract, less ten feet of width, to Schuyler B. Worthington and Virginia P. Worthington; (3) four years later, Thomas H. Obenchain, Sr. and Scotta Goodwin Obenchain, individually and as trustees for Thomas H. Obenchain, Jr. under the will of Rosa L. Goodwin, executed the 1949 warranty deed described above, which conveyed to the Worthingtons the omitted ten feet of the Original Tract plus an additional 6.1 feet; and (4) pursuant to the conveyance under the 1949 warranty deed, title to the entire 121.1-foot wide Property, including the front strip, "was indisputably consolidated in the

---

[4] The record shows the Furnisses filed an initial "no evidence and traditional motion for partial summary judgment" on February 27, 2013. In that initial summary judgment motion, the Furnisses requested the same relief subsequently requested by them in their amended summary judgment motion, plus, in the alternative, relief based on statutes pertaining adverse possession. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024–.029. ADLO filed a response to the Furnisses' initial summary judgment motion on April 14, 2013.

Worthingtons, [the Furnisses'] predecessors-in-interest." In a section of their amended motion titled "Summary," the Furnisses argued (1) they "rely on documents of record and their status as bona fide purchasers for value without notice of a competing claim to prove title to the Front Strip and need go no further to prevail against [ADLO's] claim" and (2) "[ADLO] has no evidence that it holds any right, title or interest in the Property beyond legally immaterial anecdotes and time-barred technical questions relating to a deed from over 60 years ago." Further, in a section of their amended motion titled "Traditional Motion Arguments," the Furnisses stated in part "[a]s shown above, [the Furnisses'] predecessors-in-interest form an unbroken chain of title that [ADLO] has not produced evidence to dispute." The relief requested by the Furnisses was summary judgment in their favor, "incorporating the following findings and orders": (1) "validating" the 1949 warranty deed; (2) "declaring that [the Furnisses] hold fee simple title to the Property, which specifically includes the Front Strip, pursuant to the 1949 Warranty Deed and the conveyance instruments forming the subsequent chain of conveyances"; and (3) awarding the Furnisses "attorney's fees and costs of suit" pursuant to § 37.009 of the declaratory judgments act.

Evidence attached to the Furnisses' amended motion for summary judgment included, in part, (1) certified copies of the 1929 warranty deed conveying the Original Tract to Rosa L. Goodwin, the 1945 warranty deed conveying a portion of the Original Tract to the Worthingtons, the 1949 warranty deed described above, and additional warranty deeds "forming the subsequent chain of conveyances" described by the Furnisses; (2) affidavits of Jon D'Azzo, a trustee of the trust from which the Furnisses purchased 4236 Armstrong, and Timothy Ray Carlson, the "groundskeeper for 4236 Armstrong," pertaining to landscaping and maintenance of the front strip; (3) affidavits of the Furnisses stating in part that "[n]o adverse claim was apparent" when

they acquired 4236 Armstrong; and (4) an affidavit of attorney John J. Cope respecting attorney's fees.

ADLO filed a July 10, 2013 first amended petition in which it added several parties and additional claims for "tortious interference" and "tax reimbursement." Additionally, ADLO filed a July 12, 2013 response to the Furnisses' amended motion for partial summary judgment. In that response, ADLO asserted (1) the Furnisses are not bona fide purchasers of the front strip because of "their prior, actual, and constructive knowledge of the existing claims to [the front strip]"; (2) the 1949 warranty deed "does purport to convey the . . . Front Strip to 4236 Armstrong," but "literally reeks with the smell of fraud at its creation and untimely filing"; and (3) "at best the [1949 warranty deed] raises an adverse possession claim for [the Furnisses], which fails as a matter of law." Specifically, ADLO argued in part the 1949 warranty deed is "not enforceable" because (1) "[s]uch deed was not signed in front of the referenced notary public"; (2) "[s]uch deed was notarized at least three days after the deed was purportedly signed"; (3) "[t]he signature of Scott [sic] Goodwin Obenchain on such deed is assuredly a forgery"; (4) "[n]o evidence exists that the signature of Thomas H. Obenchain, Sr. is authentic"; (5) "[s]uch deed to the Worthingtons is dated four years after the 1945 conveyance of the Worthington Lot at 4236 Armstrong"; (6) "[s]uch deed was recorded almost twenty-two (22) years after its purported execution"; (7) "[t]he [Dallas Central Appraisal District] never made reference to such deed until 2013"; (8) "[Obenchain's] father never saw the deed or was even aware of its possible existence"; (9) "[Obenchain] never saw the deed or was even aware of its possible existence until the 2012 during [sic] his 2012 Sale of 4242 Armstrong"; and (10) "[Obenchain] promptly challenged the [1949 warranty deed] (by the filing of this Suit) after such deed saw the light of day in 2012." Additionally, ADLO contended (1) "[a]lthough the [1949 warranty deed] has been of record for many years, its lack of recognition and [the Furnisses']

own request for validation of said Deed has 'opened the door' to challenges" and (2) "historical, public records of [the front strip] being included in the 4242 Armstrong tax parcel since 1945 . . . is direct evidence that title to [the front strip] might not have been a legal part of 4236 Armstrong" and "create constructive notice to [the Furnisses] that something was wrong." As to attorney's fees, ADLO asserted (1) "[w]ithout a more detailed breakdown of what counsel for the [Furnisses] actually did, or did not do, for [the Furnisses], the amount of attorney's fees requested by [the Furnisses] is not a reasonable and necessary amount" and (2) such requested fees improperly include more than $12,000 for the February 27, 2013 summary judgment motion filed by the Furnisses that was "so false" that the Furnisses "pulled" it from consideration by the trial court. Evidence attached to ADLO's response included, in part, (1) an affidavit of Obenchain; (2) business records of a real estate title company and the Dallas Central Appraisal District pertaining to payment of property taxes respecting 4236 Armstrong; (3) copies of the 1949 warranty deed and the other warranty deeds described above in the Furnisses' purported "subsequent chain of conveyances"; and (4) an affidavit of attorney Terry P. Gorman, counsel for ADLO.

Obenchain stated in part in his affidavit (1) he is the great-grandson of Rosa L. Goodwin and the grandson of Thomas H. Obenchain, Sr. and Scotta Goodwin Obenchain; (2) from 1929 to 2012, the "home and land located at 4242 Armstrong Parkway" was owned, successively, by his great-grandmother, his grandparents, his father, and him; (3) from 1929 to 1945, his great-grandmother, Rosa L. Goodwin, "owned the home and land next door, located at 4236 Armstrong Parkway"; (4) his father, Thomas H. Obenchain, Jr., "was steadfast as to [the front strip] always being a part of 4242 Armstrong"; (5) in the early 1990s, Obenchain became acquainted with Bertha B. Ahlschlager, who owned the home at 4236 Armstrong at that time; (6) during the time Ahlschlager owned the home at 4236 Armstrong, she asked Obenchain if she

could landscape the area now in dispute, i.e. the front strip, consistent with the front of her home; (7) Obenchain gave Ahlschlager consent to do so, but told her that "similar landscaping did not mean ownership"; (8) in 2012, Obenchain "sold 4242 Armstrong"[5]; (9) prior to selling 4242 Armstrong in 2012, Obenchain "separated from the lot" certain real property, which included the front strip, and later conveyed the front strip to ADLO; and (10) the first time Obenchain "ever became aware of the existence of the [1949 warranty deed]" was in 2012 during "the title work" for his sale of 4242 Armstrong.[6]

Gorman stated in part in his affidavit that before the 2012 purchase of 4236 Armstrong by the Furnisses, (1) he "contacted one of the real estate agents for [the Furnisses], and asked her to inquire of [the Furnisses] whether they were interested in purchasing any of the land now being referred to as [the front strip]" and (2) "such agent (of [the Furnisses]) subsequently informed me that she had spoken with [the Furnisses], and they were not interested in any such purchase." Additionally, Gorman stated in part that he had reviewed the Furnisses' request for attorney's fees and, for the same reasons asserted in ADLO's summary judgment response described above, "can only opine that the amount requested is not a reasonable and necessary amount."

The Furnisses filed a July 11, 2013 motion to strike ADLO's first amended petition and a July 12, 2013 motion to strike ADLO's response to the amended summary judgment motion. With respect to ADLO's summary judgment response, the Furnisses asserted in part (1) their amended motion for summary judgment "was called to trial for the court's July 12, 2013 submission docket"; (2) "[a]ll responses . . . were due on or before July 5, 2013"; and (3)

---

[5] Obenchain's affidavit does not identify the 2012 purchaser of 4242 Armstrong.

[6] Additionally, Obenchain testified in his affidavit that certain facts asserted in his response are "true and correct recitations of the facts," including his assertion described above that the signature of Scotta Goodwin Obenchain on the 1949 warranty deed "is assuredly a forgery."

ADLO's response was "filed with the court without leave of court on the trial date, July 12, 2013, creating inherent prejudice by precluding consideration or reply by Movants."

The trial court signed a July 18, 2013 order in which it granted, in part, the Furnisses' amended motion for partial summary judgment. Specifically, the trial court (1) "validate[d]" the 1949 warranty deed, (2) declared that the Furnisses hold fee simple title to the front strip pursuant to the 1949 warranty deed and subsequent conveyance instruments, and (3) stated "summary judgment for attorney's fees is denied."

On July 24, 2013, the trial court held a hearing on the Furnisses' motion to strike ADLO's first amended petition. During that hearing, ADLO's counsel, Gorman, stated to the trial court that he was not aware of the July 18, 2013 order described above granting, in part, the Furnisses' amended motion for summary judgment. Gorman stated, "Your Honor, did that have any reason to do with the alleged allegation that the response was late?" The trial court stated, "No, sir. . . . I did consider the response, although I don't see any particular excuse for it being late."

Subsequently during the hearing, the trial court stated to Gorman in part,

I also looked at your First Amended Petition which sent me in the direction of wondering what previous litigation there had been around this property.

And although I confess I have absolutely no independent recollection of it, I found that there was a 2008 lawsuit filed by Mr. Obenchain against the Estate of his father seeking reformation of the deed to this property which was granted, and which establishes the legal description to be the northwest 75 feet of lot 18 and the southeast 65 feet of lot 19—which, if my math hasn't failed me totally, is 140-foot frontage, not 155 or 150 or whatever it is that you are claiming in this lawsuit.

And I think I'm entitled to take notice of that prior judgment, and I think it probably works some form of estoppel in this case.
. . . .
. . . Your client is obviously a very litigious type. Good for you. Good for him.

I don't know what, if anything, needs to be done about that back strip, but the record title for the front strip is very clear. That's what I have granted summary judgment on.

–9–

. . . And as I say, I am striking your First Amended Petition . . .

Further, later during the hearing, the following exchange occurred:

MR. GORMAN:     Your Honor, do I need to ask for a different court?

THE COURT:     No, sir.

MR. GORMAN:     It is clear that you have made impressions about myself, although we have never met prior to today.

THE COURT:     I formed impressions only from the pleadings that you have filed, sir.

MR. GORMAN:     I understand. But as we sit here today, having not met you, it is clear that you have formed impressions of me and my client although we have not been before you. And I'm wondering if I need to file a motion to recuse.

THE COURT:     Well, that's not for me to say, Mr. Gorman. If you file it, I will refer it to the presiding judge, and it will be dealt with appropriately.

Following the hearing, the parties agreed in writing to submit briefing and affidavits on the issue of attorney's fees in lieu of a bench trial on that issue. The amount of "reasonable and necessary" attorney's fees requested by the Furnisses in their initial brief in the trial court on that issue was $40,670, plus additional amounts in the event of successful defense of appeals. Further, in their reply brief on attorney's fees,[7] the Furnisses asserted in part,

> [ADLO] argues that the crux of the lawsuit was a title claim, when the only basis for title was to invalidate a deed. . . . In light of the 2007 amendment to § 37.004 of the Texas Civil Practice and Remedies Code that expressly authorizes declaratory judgment actions in resolution of boundary disputes, expressly notwithstanding Texas Property Code § 22.011, . . . a declaratory judgment concerning the validity of the deed in resolution of a boundary dispute warrants an award of attorneys' fees.

---

[7] The record on appeal does not contain a response by ADLO to the Furnisses' initial brief respecting attorney's fees. In their brief in this Court, the Furnisses state, "The clerk's record does not reflect [ADLO's] Response to [the Furnisses'] Request for Attorney's Fees that was served on counsel for the Furnisses by facsimile on September 20, 2013 at 21:07:42 and to which the Furnisses responded. . . . The trial court clerk informed Appellees' counsel that no filing was apparent in the trial court's file."

Attachments to the Furnisses' briefs respecting attorney's fees filed in the trial court included, in part, affidavits of attorneys J. Sean Lemoine and John J. Cope and redacted itemized billing statements.

In a "sur-reply" to the Furnisses reply brief filed in the trial court, ADLO contended in part "[the Furnisses] are attempting to construe this Suit as a boundary dispute and/or solely as an action to construe a deed, both of which are eligible for attorneys' fees under the Texas Uniform Declaratory Judgments Act." However, ADLO also argued, "fees under the [declaratory judgments act] are not available unless the boundary issue addresses only the location of a line and not any ownership issues as to the boundary." Further, according to ADLO, (1) "[i]n the Suit before the Court, the location of the Front Strip was never the issue, but ownership of the Front Strip was"; (2) "the Suit at hand is in no manner a boundary dispute," but rather is "entirely about possession"; (3) the trial court's declaration as to the 1949 warranty deed "was merely incidental to the title issues asserted by [ADLO]" and "[a]s such, the 'deed declaration' of the [trial court] does not allow the award of attorney's fees to [the Furnisses]"; and (4) "[i]n addition to the fact that no term or condition of [the 1949 warranty deed] was being construed by [the trial court] in trying to determine the title of the Front Strip, ownership of the Front Strip as asserted by [ADLO] included issues of adverse possession and the purported bona fide purchaser status of [the Furnisses]." Therefore, ADLO asserted, "Texas jurisprudence does not allow [the Furnisses] a recovery of attorney's fees." Finally, ADLO stated in part in its sur-reply "[the Furnisses] themselves asserted that [ADLO] had incorrectly tried to characterize these proceedings as a matter under the [declaratory judgments act] when the correct remedy was a trespass-to-try-title action."

In an "objection and conditional response" to ADLO's sur-reply, the Furnisses asserted in part that the sur-reply constituted "a clear violation of the parties' Rule 11 agreement" and the

–11–

trial court should "refuse to consider the sur-reply for any purpose." Further, the Furnisses contended section 37.004(c) is applicable in this case. The record is silent as to the disposition of the Furnisses' objection to ADLO's sur-reply.

In a final order dated October 16, 2013, the trial court restated the portions of its July 18, 2013 order described above granting the Furnisses' amended motion for partial summary judgment and awarded the Furnisses attorney's fees in the amount of $40,670, plus additional attorney's fees in the event of successful defense on appeal. This appeal timely followed.

## II. ADLO'S ISSUES

### A. Standard of Review

We review a trial court's decision to grant summary judgment de novo. *See, e.g., Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When a party files a combined no-evidence and traditional motion for summary judgment, we generally consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A no-evidence motion for summary judgment asserts there is no evidence of one or more essential elements of a claim upon which the opposing party would have the burden of proof at trial. *See Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682 (Tex. App.—Dallas 2000, no pet.); TEX. R. CIV. P. 166a(i). In reviewing a no-evidence summary-judgment motion, we consider whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.).

The movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *See, e.g., Max Duncan Family Inv., Ltd. v. NTFN, Inc.*, 267 S.W.3d 447, 451 (Tex. App.—Dallas 2008, pet. denied) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *Espalin*, 27 S.W.3d at 682.

In both instances, we credit evidence favorable to the nonmovant if reasonable jurors could and disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We review a trial court's decision to award attorney's fees under the declaratory judgments act for an abuse of discretion. *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454 (Tex. App.—Dallas 2010, pet. denied). "The trial court abuses its discretion if its ruling that the attorney's fees were recoverable was arbitrary or unreasonable." *Id.* (concluding trial court abused its discretion by awarding attorney's fees where declaratory judgments act was improperly used); *see Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 757–58 (Tex. App.—El Paso 2009, pet. denied) (concluding trial court abused its

–13–

discretion by awarding attorney's fees under declaratory judgments act because claim was one to quiet title and declaratory action could not "supplant the action to quiet title"); *see also Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("[i]t is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles"); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242–43 (Tex. 1985) ("The test for abuse of discretion . . . is a question of whether the trial court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable." (citation omitted)).

### *B. Applicable Law*

Under rule 166a(i) of the Texas Rules of Civil Procedure, "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "The motion must state the elements as to which there is no evidence." *Id.* The comment to rule 166a(i) states that the motion "must be specific in challenging the evidentiary support for an element of a claim or defense," and the rule "does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Id.* 1997 cmt. "[A] nonspecific and conclusory motion for no-evidence summary judgment is . . . insufficient as a matter of law and does not require an objection [to preserve error for appeal]." *Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 288 (Tex. App.—Dallas 2013, pet. filed).

Pursuant to Texas Rule of Civil Procedure 166a(c), except on leave of court, the adverse party in a summary judgment proceeding may file and serve opposing affidavits or other written response "not later than seven days prior to the day of hearing." TEX. R. CIV. P. 166a(c). When nothing in the record indicates the trial court granted leave to file a late summary judgment

response, we presume the trial court did not consider the response. *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 721 (Tex. App.—Dallas 1995, no writ) (citing *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985)).

The Texas Property Code provides in part, "A trespass to try title action is the method for determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2014). "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Wilhoite v. Sims*, 401 S.W.3d 752, 760 (Tex. App.—Dallas 2013, no pet.).

A declaratory judgment is a remedial measure that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations. *See Halliburton Energy Servs., Inc. v. Axis Tech., LLC*, 444 S.W.3d 251, 262 (Tex. App.—Dallas 2014, no pet.) (citing *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App.—Dallas 2009, pet. denied)). The Texas Uniform Declaratory Judgments Act is contained in chapter 37 of the Texas Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.011. Under section 37.004(a) of the declaratory judgments act, "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). Further, the act provides in part, "[n]otwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." *Id.* § 37.004(c). Additionally, section 37.009 of the act states,

"In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id*. § 37.009.

Section 16.033 of the Texas Civil Practice and Remedies Code provides in part,

A person with a right of action for the recovery of real property or an interest in real property conveyed by an instrument with one of the following defects must bring suit not later than two years after the day the instrument was filed for record with the county clerk of the county where the real property is located:
. . . .
(6) acknowledgment of the instrument in an individual, rather than a representative or official, capacity;

(7) execution of the instrument by a trustee without record of the authority of the trustee or proof of the facts recited in the instrument;

(8) failure of the record or instrument to show an acknowledgment or jurat that complies with applicable law; or

(9) wording of the stated consideration that may or might create an implied lien in favor of the grantor.

*Id*. § 16.033(a) (West 2002). Section 16.003 does not apply to a forged instrument. *Id*. § 16.033(b).

A bona fide purchaser is "[a] person who acquires property in good faith, for value, and without notice of any third-party claim or interest." *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.); *see also* TEX. PROP. CODE ANN. § 13.001 (West 2014). Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). However, the protection usually afforded to a bona fide purchaser for value without notice does not apply when such purchaser's claim is dependent upon a forged instrument. *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied).

## C. Application of Law to Facts

### 1. "Sua Sponte" Actions of Trial Court

We begin with ADLO's second and third issues, in which ADLO contends the trial court committed reversible error (1) "when it acted sua sponte and considered evidence and grounds not presented to the [trial court]" and (2) "when acted sua sponte as the trier of fact in making conclusions as to the veracity and credibility of [ADLO's] summary judgment evidence." We consider these two issues together.

According to ADLO,

[D]uring the July 24, 2013 Ruling, the [trial court] stated that it was granting [the Furnisses' amended] MSJs, in part, because the [trial court]:

(a) Had conducted a database search of the Dallas County public records and determined that [Obenchain] was litigious;

(b) Had found a prior, 2009 Final Judgment (issued by the same Court and the same jurist) as to certain real property previously owned by [Obenchain];

(c) Concluded that the 2009 Final Judgment established that [Obenchain], and therefore subsequently [ADLO], never held title to the Front Strip; and

(d) Concluded that [ADLO] could never produce any evidence in support of [ADLO's] Claims, or any evidence to counter [the Furnisses'] Claims, including the claimed status as a bona fide purchaser.

ADLO argues (1) "[p]aramount in Texas summary jurisprudence is the tenet that the court shall only consider evidence and grounds contained within the applicable motions and responses"; (2) the judgment in the 2008 lawsuit described above [the "2009 Final Judgment"] "was not part of the evidence before the Court and was not reviewed based on any 'grounds' raised in support of [the Furnisses' amended] MSJs"; and (3) although a trial court can "take judicial notice of its own records" in certain circumstances, the requirements pertaining to judicial notice were not met in this case. Further, ADLO contends in part,

–17–

Not only was it improper for the [trial court] to make its own determination as to the veracity and credibility of [ADLO's] MSJ Evidence, the [trial court's] determinations were wrong.

. . . [T]here was nothing about the issuance of the 2009 Final Judgment that was adversarial or litigious. Yet without ever even meeting, or seeing, [Obenchain], the [trial court] made conclusions as to [Obenchain's] veracity, credibility, and character. Further . . . , the conclusion reached by the [trial court] regarding the applicable legal description set forth in the 2009 Final Judgment was wholly incorrect.

By wholly determining the veracity and credibility of [ADLO's] MSJ Evidence, the [trial court] denied [ADLO] its due process rights of cross examination, as well as the right to have witnesses be judged by their testimony given in person, not just on paper.

By unilaterally concluding, at a summary judgment level, that [ADLO] "could not ever prove its case," the [trial court] denied [ADLO] its right to a jury.

The Furnisses respond that "[t]he trial court did not base its judgment on evidence and grounds not properly before it, and did not base its judgment on conclusions as to the veracity and credibility of summary judgment evidence submitted by [ADLO]." According to the Furnisses, (1) ADLO "has not shown that the trial court referenced the earlier [2008] case, much less relied upon it, when the court ruled on the motion for summary judgment"; (2) "[t]he record disproves [ADLO's] allegation and confirms that the trial court based its ruling on summary judgment upon a determination that 'the record title for the front strip is very clear,' not on the matters discussed at the hearing on the motion to strike the First Amended Petition"; and (3) "[i]n any event, the [trial] court is entitled to take judicial notice of the prior case sua sponte."

The record shows the trial court signed a July 18, 2013 order in which it granted, in part, the Furnisses' amended motion for summary judgment as described above. The hearing at which the trial court made the statements that ADLO contends support its complaints occurred six days later, on July 24, 2013. The statements of the trial court at the July 24 hearing do not show when the trial court "found" the 2009 Final Judgment, nor do those statements demonstrate the trial court considered the 2009 Final Judgment in ruling on the amended summary judgment motion. Further, the trial court stated in part "the record title for the front strip is very clear. That's what I

–18–

have granted summary judgment on." ADLO made no objection in the trial court respecting the 2009 Final Judgment and did not file a motion to recuse the trial judge. Even assuming without deciding that ADLO's complaints described above have been preserved for this Court's review, we cannot agree with ADLO that the record shows the trial court "sua sponte considered evidence and grounds not presented to the [trial court]" in making its summary judgment ruling or made the complained of "conclusions as to the veracity and credibility" of ADLO's summary judgment evidence.

On this record, we decide against ADLO on its second and third issues.

### 2. Summary Judgment

Next, we address together ADLO's first and fourth issues, in which ADLO asserts the trial court erred by granting the Furnisses' amended no-evidence and traditional motion for partial summary judgment. According to ADLO, the Furnisses' amended no-evidence motion "fails as a matter of law" because (1) it does not "identify which of [ADLO's] claims are being challenged on a no-evidence basis" and "the elements thereof being challenged" and therefore fails to comply with rule 166a(i)'s requirement that a no-evidence motion for summary judgment "must state the elements as to which there is no evidence" and (2) "[e]ven if [the Furnisses] had identified the causes of action, and the elements thereof, being challenged by their no-evidence MSJ, [ADLO's] MSJ evidence more than satisfies the 'more than a scintilla of evidence' applicable standard of proof." Additionally, ADLO argues the trial court's granting of traditional summary judgment was in error because "[ADLO's] MSJ Evidence raises numerous genuine issues of material fact to be decided only by a trier of fact."

The Furnisses respond in part (1) "[ADLO] has no summary judgment evidence in the record since [ADLO's] evidence was submitted late and without leave; (2) "[e]ven if [ADLO's] response was not barred as a matter of law, substantive defects render [the affidavit testimony

–19–

submitted by ADLO] inadmissible"; (3) "ADLO has less than a scintilla of evidence when [ADLO's] incompetent summary judgment evidence is properly disregarded"; and (4) "ADLO submitted no evidence that it holds any right, title or interest in the Property and relied instead on late-filed and legally immaterial anecdotes and a time-barred technical challenge consisting of speculation relating to a deed from over 60 years ago." Additionally, the Furnisses assert four pages of objections to ADLO's summary judgment affidavits for the first time on appeal and argue that their July 12, 2013 motion to strike ADLO's response to the amended motion for summary judgment "should be construed as an objection to all defective evidence sufficient to comprehensively preserve such issues for appeal." Further, the Furnisses contend "[t]he hybrid motion clearly sets forth its traditional and no-evidence grounds as required."

### a. ADLO's Summary Judgment Evidence

ADLO asserts in its appellate reply brief (1) counsel for ADLO was told by the trial court coordinator that under the trial court's "local rules," ADLO's summary judgment response was due July 12, 2013; (2) ADLO's response was filed on that date and thus was timely; (3) the trial court stated during the July 24, 2013 hearing that it "did consider the response" and "[s]uch public acceptance by the Trial Court serves as the Trial Court overruling [the Furnisses'] Motion to Strike [ADLO's] MSJ Response"; and (4) while "substantive" objections to summary judgment evidence can be raised on appeal, none of the Furnisses' objections to ADLO's summary judgment evidence are substantive and therefore none have been preserved for appellate review.

We need not reach the parties' arguments and objections described above respecting whether ADLO's summary judgment evidence should be disregarded in this Court's analysis. As described below, even assuming without deciding that all of the evidence attached to ADLO's summary judgment response was properly considered by the trial court, we cannot

–20–

agree with ADLO that its evidence satisfies its burden respecting the Furnisses' amended motion for no-evidence and traditional summary judgment.

### b. No-Evidence Motion for Summary Judgment

### i. Sufficiency of No-Evidence Motion

As to ADLO's challenge respecting the requirements of rule 166a(i), the Furnisses respond that they "specifically urged [ADLO's] lack of evidence of title in [the] opening summary of the motion" and "later identified . . . the lack of evidence rebutting the Furnisses' chain of record title" by stating in the motion (1) "[m]oreover, [ADLO] has no evidence that it holds any right, title or interest in the Property beyond legally immaterial anecdotes and time-barred technical questions relating to a deed from over 60 years ago" and (2) "[a]s shown above, Movants' predecessors-in-interest form an unbroken chain of title that [ADLO] has not produced evidence to dispute."

This Court has stated "[a] no-evidence motion that only generally challenges the sufficiency of the non-movant's case and fails to state the specific elements that the movant contends lack supporting evidence is fundamentally defective and cannot support summary judgment as a matter of law." *Jose Fuentes Co*., 418 S.W.3d at 286–87. Accordingly, a motion that asserts, both before and after listing the elements of each claim, that "appellants ha[ve] no evidence to support 'one or more' of the elements of the claim" is legally insufficient. *Id*. Further, a no-evidence motion that "restates the name of each cause of action [asserted by the non-movant], but fails to challenge or even mention a single element of any of these claims as to which there is no evidence" cannot support a trial court's summary judgment. *Coleman v. Prospere*, No. 05-13-00068-CV, 2014 WL 4672456, at *2 (Tex. App.—Dallas Sept. 22, 2014, no pet.).

The record in the case before us shows the motion in question is titled "First Amended No-Evidence and Traditional Motion for Partial Summary Judgment." There is no section in the motion specifically pertaining to no-evidence arguments. However, the statements described above by the Furnisses are contained, respectively, in sections of the motion titled "Summary" and "Traditional Motion Arguments." Those statements go beyond merely listing causes of action or elements or making a general assertion of no evidence as to "one or more" elements. *See Jose Fuentes Co.*, 418 S.W.3d at 286–87; *Coleman*, 2014 WL 4672456, at *2. On this record, we conclude the Furnisses' no-evidence motion for summary judgment satisfies the requirements of rule 166a(i). *See* TEX. R. CIV. P. 166a(i); *Heirs of Garcia v. Parr*, No. 04-12-00767-CV, 2014 WL 3928602, at *5 (Tex. App.—San Antonio Aug. 13, 2014, pet. filed) (mem. op.) (no-evidence motion for summary judgment in trespass to try title action met requirements of 166a(i) where movant stated in motion there is no evidence nonmovant holds title to any portion of disputed property).

## ii. Sufficiency of ADLO's Evidence to Defeat No-Evidence Motion

In order to defeat the Furnisses' no-evidence motion for summary judgment, ADLO was required to "present some competent evidence of [its] interest in the disputed property." *Brownlee v. Sexton*, 703 S.W.2d 797, 799–800 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). In the "Argument and Authorities" section of its brief on appeal, ADLO asserts generally that its "MSJ Evidence" attached to its summary judgment response "more than satisfies the 'more than a scintilla of evidence' applicable standard of proof." However, ADLO does not cite to the record or otherwise describe the evidence it contends met its no-evidence summary judgment burden.[8] *See* TEX. R. APP. P. 38.1(i). Moreover, as stated by ADLO in its brief in this Court,

---

[8] In its appellate brief, ADLO includes an initial section, preceding its "Summary of the Argument" and "Argument and Authorities" sections, titled "Material Facts Controverting [the Furnisses'] Claims and Supporting [ADLO's] Claims." In that initial section, ADLO describes the entirety of the evidence attached to the amended summary judgment motion and ADLO's response, asserts that evidence "supports the

ADLO does not dispute that the 1949 warranty deed "purports to convey to the above described Worthingtons a tract of land consisting only of the Front Strip" and "[i]ncluded in the legal description for the 2012 Conveyance to [the Furnisses] was the Front Strip." Rather, ADLO argues in its brief on appeal that the Furnisses' reliance upon the 1949 warranty deed is "misplaced" for the same ten reasons ADLO asserted the 1949 warranty deed is "not enforceable" set out in its response to the Furnisses' amended motion for summary judgment described above. However, ADLO's challenges respecting the 1949 warranty deed were not asserted within two years after the date that deed was "filed for record." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.033(a).[9] Further, while ADLO cites Obenchain's affidavit in support of its allegations of forgery, the only statement attested to by Obenchain respecting forgery was his assertion that "[t]he signature of Scott [sic] Goodwin Obenchain on such deed is assuredly a forgery." That assertion does not constitute more than a scintilla of evidence of forgery. *See Ever Constr. Corp. v. Su*, No. 05-13-00385-CV, 2014 WL 3907996, at *5 (Tex. App.—Dallas Aug. 12, 2014, no pet.) (mem. op.) (evidence which "at best" established company owner was suspicious that signature on checks in question had been forged was merely scintilla of evidence). On this record, we conclude ADLO did not meet its burden to produce more than a scintilla of evidence in support of its claims respecting its ownership of the front strip.

We decide against ADLO on its fourth issue.

### c. Traditional Motion for Summary Judgment

As to the Furnisses' traditional motion for summary judgment, ADLO asserts "[t]he evidence before the [trial court] is certainly sufficient to raise numerous genuine issues of

---

following material facts as to the front strip," and sets forth nine pages of purported "material facts" with citations to the evidence. That section does not specifically describe which of the purported "material facts" pertain to ADLO's complaints respecting the no-evidence portion of the Furnisses' amended motion for summary judgment.

[9] As described above, ADLO asserted in its summary judgment response in the trial court that "[a]lthough the [1949 warranty deed] has been of record for many years, its lack of recognition and [the Furnisses'] own request for validation of said Deed has 'opened the door' to challenges." ADLO cited no authority for that position in the trial court and does not address that position on appeal.

material fact as to the prior deeds related to the Front Strip, the prior acts of ownership as to the Front Strip, whether Todd and Heather had a lawful claim of adverse possession to the Front Strip, and whether Todd and Heather were bona fide purchasers as to the Front Strip." Specifically, ADLO contends the "MSJ Evidence" attached to its summary judgment response raised the following fact issues: (1) "Was the Front Strip ever lawfully conveyed to outside of the Obenchain chain of title?"; (2) "Was the [1949 warranty deed] valid?"; (3) "Even if the [1949 warranty deed] was valid, was said deed sufficient to perfect an adverse possession claim against the Obenchain chain of title as to the Front Strip?"; (4) "Did the predecessors in title to [the Furnisses] ever exercise any rights of ownership to the Front Strip?"; and (5) "Were [the Furnisses] actually bona fide purchasers, or did they have notice of the claims to the Front Strip?"[10]  The Furnisses respond in part that they provided summary judgment evidence proving their record title to the front strip and the absence of notice regarding ADLO's claims.

To the extent ADLO contends fact issues respecting the Furnisses' adverse possession claim precluded summary judgment, the record shows adverse possession was not a ground relied upon by the Furnisses in their amended summary judgment motion.  Therefore, summary judgment could not have been granted by the trial court on that ground.  *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 122 (Tex. App.—Dallas 2009, pet. denied).  Additionally, we concluded above that the record contains no evidence supporting ADLO's claims to ownership of the front strip. Therefore, it is immaterial whether the summary judgment evidence supports the Furnisses' affirmative defense of bona fide purchaser respecting ADLO's claims and we do not address the arguments pertaining to that affirmative defense.  *See* TEX. R. APP. P. 47.1.  The deeds contained

---

[10] As in its argument described above pertaining to the no-evidence portion of the amended motion for summary judgment, Armstrong does not cite to the record in the argument section of its appellate brief pertaining to traditional summary judgment.

in the record and described above show the front strip was conveyed to the Worthingtons in the 1949 warranty deed and was subsequently conveyed to the Furnisses through a chain of title emanating from the Worthingtons. Other than asserting the same arguments addressed and rejected by this Court in the above analysis pertaining to the no-evidence summary judgment, ADLO does not explain how its summary judgment evidence raises a fact issue as to the validity of the 1949 warranty deed or as to whether the front strip was "conveyed to outside of the Obenchain chain of title" pursuant to that warranty deed. On this record, we conclude the trial court did not err by granting the Furnisses' motion for traditional summary judgment.

We decide against ADLO on its first issue.

### 3. Attorney's Fees

In its fifth issue, ADLO asserts the trial court "committed reversible error by granting [the Furnisses] attorney's fees contrary to Texas jurisprudence." According to ADLO, (1) "an award of attorney's fees in a trespass to try title action matter (which is what the Suit is) is not permissible" and (2) "[e]ven if such an award was allowed under Texas law, the amount awarded to [the Furnisses] was excessive."

As to the first portion of ADLO's argument, the Furnisses respond that "even if ADLO had not itself sought relief under the [declaratory judgments act], it would be clear that a declaratory judgment action is appropriate for this case" pursuant to sections 37.004(a) and 37.004(c) of the declaratory judgments act.

ADLO bases its position on *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004). In *Martin*, the Texas Supreme Court concluded property code section 22.001, the Texas trespass-to-try-title statute, governed the parties' substantive rights in a boundary dispute and the parties could not proceed under the Texas Declaratory Judgments Act to recover attorney's fees. *Id*. at 267. Subsequent to *Martin*, in 2007, the Texas Legislature amended the declaratory judgments

act to provide in part that, notwithstanding section 22.001 of the property code, a person interested under a deed, will, written contract, or other writings constituting a contract "may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c). ADLO contends in part in its appellate brief

> Although subsequent changes to the [declaratory judgments act] allowed the [declaratory judgments act] to be utilized where the sole issue before the court was the location of a real estate boundary line, the *Martin* edict remains the law in the State of Texas that a dispute as to title, i.e. ownership, of a piece of real property is a trespass to try title claim, exclusively, and does not allow the award of attorneys' fees even if the dispute is also styled as a [declaratory judgments act] matter.

The Furnisses argue in part that "a declaratory judgment action is appropriate for this case" because the post-*Martin* amendment to section 37.004 "authorizes declaratory judgment actions in resolution of boundary disputes" and "expressly overrides" property code section 22.001. Further, the Furnisses contend "[e]ach of the post-amendment cases cited by ADLO is either patently inapplicable or directly supports the Furnisses' position."

One of the "post-amendment" cases cited to us by both parties in support of their arguments is *Texas Parks and Wildlife Department v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011). Although that case ultimately was resolved on the issue of sovereign immunity, we conclude it directs our decision as to whether section 37.004(c) applies in this case. *Id.* In *Sawyer Trust,* a trust (the "Trust") owned real property over which a fork of the Red River crossed. *Id.* at 387. The Trust had an opportunity to sell sand and gravel from the streambed, but was concerned that the State of Texas, which owns the soil underlying navigable streams, would seek control of the property and interfere with the sale. *Id.* The Trust sued the Texas Parks and Wildlife Department (the "Department"), seeking, in part, a declaratory judgment that the fork was not navigable. *Id.* The Department filed a plea to the jurisdiction, which was

denied by the trial court. *Id.* The court of appeals affirmed the denial of the plea to the jurisdiction, concluding in part that "although the declaratory action 'may have the collateral consequence of resolving a factual dispute that impacts a claim being made by the State, it is not an action that is in essence one for the recovery of money from the State or for determination of title; therefore, legislative permission to prosecute is unnecessary.'" *Id.*

In the supreme court, the Department argued in part that "determination of whether a stream is navigable constitutes a determination of the State's title to property and sovereign immunity bars a suit that would have such an effect." *Id.* The Trust responded in part that the trial court had jurisdiction because "the suit is . . . an authorized declaratory judgment action to determine a boundary line as opposed to a trespass to try title suit to determine ownership rights." *Id.* Specifically, the Trust argued "the claims in this case constitute a boundary dispute" and "'new section 37.004(c) can easily and logically be construed as a legislative waiver of any sovereign immunity that has ever in the past impeded private titleholders' efforts to litigate their boundary disputes against the State.'" *Id.* at 389. The supreme court disagreed that the claims in question constituted a boundary dispute and reversed the court of appeals' decision. *Id.* at 387, 389. The supreme court stated in part,

> In 2007, the Texas Legislature added an exception to the rule that a trespass to try title claim is the exclusive method for adjudicating disputed claims of title to real property. Section 37.004(c) of the Texas Civil Practice and Remedies Code provides that, notwithstanding the trespass to try title statute, a person interested under a deed, will, written contract, or other writings constituting a contract may obtain a determination of title based on a property boundary line "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties."
> . . . .
> We need not decide whether section 37.004(c) effects a waiver of the State's immunity from suit for boundary disputes because this controversy is not over the boundary between State-owned land and Trust-owned land; rather it is over whether the State owns any land at all. The case involves rival claims to ownership of the entire streambed. Consequently, the Trust's suit in substance is one to determine title to land. Such a suit against the State is barred by sovereign immunity absent legislative consent.

–27–

*Id*. at 389–90 (citations omitted) (emphasis added).

The record shows the controversy in the case before us is "not over the boundary between" land owned by ADLO and land owned by the Furnisses, but rather involves rival claims to ownership of the entire front strip. *See id*. at 390. On this record, we cannot agree with the Furnisses that section 37.004(c) is applicable in this case.[11] *See id*.; *Coker v. Geisendorff*, 370 S.W.3d 8, 12 (Tex. App.—Texarkana 2012, no pet.) (concluding plaintiff's claims against defendant constituted "traditional claim of trespass to try title" rather than boundary dispute "because [defendant's] claimed property lies wholly inside the boundaries of the property claimed by the [plaintiffs]"); *Lile v. Smith*, 291 S.W.3d 75, 77–78 (Tex. App.—Texarkana 2009, no pet.) (concluding section 37.004(c) was inapplicable because "the issue was not one of the location of a boundary but was, instead, the determination of the title to a well-defined parcel of land").

Additionally, we disagree with the Furnisses' contention that attorney's fees are recoverable because a declaratory judgment action is appropriate in this case pursuant to section 37.004(a). As described above, section 37.004(a) provides in part that "[a] person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."

---

[11] The Furnisses do not explain how the case before us is one in which "the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." *See id*.; TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c). Further, in addition to relying on *Sawyer Trust*, the Furnisses cite three other "post-amendment cases cited by ADLO" that the Furnisses contend are "either patently inapplicable or directly support[]" their position. None of those cases involve the applicability of section 37.004(c) to facts similar to those before us. *See Teon Mgmt., LLC v. Turquoise Bay Corp*., 357 S.W.3d 719, 723–727 (Tex. App.—Eastland 2011, pet. denied) (plaintiff who sought declaratory judgment that seven oil and gas leases had not terminated and that plaintiff was operator of four wells located on those leases should have proceeded with trespass to try title suit rather than declaratory judgment claim because case "involved rival claims to the mineral estate, and every substantive issue was resolved when the trial court determined who owned the mineral estate"); *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 62–63 (Tex. App.—Fort Worth 2011, pet denied) (where plaintiffs requested declaratory judgment declaring deed reserving mineral interests to be valid and "recognized on appeal that their suit is based primarily on their claim for legal title," essence of suit was "to obtain a declaration of title" and plaintiffs were not entitled to attorney's fees under declaratory judgments act); *Poag v. Flores*, 317 S.W.3d 820, 828–829 (Tex. App.—Fort Worth 2010, pet. denied) (action requesting declaratory judgment that oil and gas lease is invalid and ordering it "removed from the title" of plaintiff's property was a trespass to try title suit and attorney's fees were not recoverable under declaratory judgments act).

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). However, in *Coinmach Corp. v. Aspenwood Apartments Corp.*, 417 S.W.3d 909, 926 (Tex. 2013), the supreme court stated as follows:

> We have previously held that, when "the trespass-to-try-title statute governs the parties' substantive claims . . . , [the plaintiff] may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees." *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004). In so holding, we noted that the Legislature has provided the trespass-to-try-title statute as "*the* method of determining title to . . . real property," and the Legislature did not provide for attorney's fees in such actions. *Id.* (citing TEX. PROP.CODE § 22.001(a)) (emphasis added).
> . . . .
> It is undisputed that the present case requires determination of the parties' possessory rights to the property. We see no legitimate basis to distinguish this case from *Martin*, in which we affirmed and upheld the Legislature's intent that chapter 22 of the Texas Property Code govern the resolution of disputes involving legal interests in real property.

*Id.* (emphasis original); *see also Sani v. Powell*, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied) (stating "[a]ny suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form" and attorney's fees pursuant to the declaratory judgments act "are not available in a suit to quiet title or to remove cloud on title"). Although both sides in the case before us couched their claims in terms of requests for declarations, everything requested of the court is necessary to, and a component of, the ultimate relief sought, which is to clear title to the front strip.[12]  *See Sani*, 153 S.W.3d at 746. Accordingly, we conclude the Furnisses were not entitled to an award of attorney's fees under the declaratory judgments act and the trial court abused its discretion by awarding those fees. *Id.*; *see Coinmach Corp.*, 417 S.W.3d at 926; *XTO Energy, Inc.*, 357 S.W.3d at 62–63 (concluding that although validity of deed was contested, essence of suit was title dispute and therefore award of attorney's

---

[12] Specific requirements for trespass to title actions are set forth in Texas Rules of Civil Procedure 783 through 809. *See* TEX. R. CIV. P. 783–809. The parties do not address those rules on appeal and the record does not show any objection in the trial court by either side respecting lack of compliance with those rules. *Cf. Buckingham v. McAfee*, 393 S.W.3d 372, 375 (Tex. App.—Amarillo 2012, pet. denied) (party waives right to insist upon compliance with requirements for trespass to try title action when it fails to object); *Teon Mgmt., LLC*, 357 S.W.3d at 726 (same).

fees pursuant to declaratory judgments act was improper); *see also RIHR Inc.*, 308 S.W.3d at 454.

We decide in ADLO's favor on its fifth issue.

### III. CONCLUSION

We decide (1) against ADLO on its first, second, third, and fourth issues and (2) in favor of ADLO on its fifth issue. We reverse the portion of the trial court's order awarding the Furnisses attorney's fees against ADLO and render judgment denying the Furnisses' request for attorney's fees. In all other respects, the trial court's order is affirmed.

131581F.P05

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARMSTRONG DLO PROPERTIES, LLC,
Appellant

No. 05-13-01581-CV     V.

TODD A. FURNISS AND HEATHER E.
FURNISS, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-11883-E.
Opinion delivered by Justice Lang, Justices
Brown and Whitehill participating.

      In accordance with this Court's opinion of this date, we **REVERSE** the portion of the trial court's order awarding appellees Todd A. Furniss and Heather E. Furniss attorney's fees against appellant Armstrong DLO Properties, LLC and **RENDER** judgment denying appellees' request for attorney's fees. In all other respects, the trial court's order is **AFFIRMED**.

      It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered this 21st day of January, 2015.